IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH L. CANTRELL,  )<br>  )<br>        **Plaintiff,**  )<br>  )<br>v.  )<br>  )<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of the Social  )<br>Security Administration,[1]  )<br>  )<br>        **Defendant.**  ) | Case No. CIV-12-97-SPS |

## OPINION AND ORDER

The claimant Elizabeth L. Cantrell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 10, 1983, and was twenty-seven years old at the time of the administrative hearing. (Tr. 40, 126 ). She completed the twelfth grade, and has worked as a daycare worker and laborer. (Tr. 53, 158). She alleges that she has been unable to work since January 1, 2005, due to a chronic pain skin disorder. (Tr. 153).

## Procedural History

In November 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 31, 2011. (Tr. 23-32). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step two of the sequential evaluation. He found that the claimant had the medically determinable impairments of hidradenitis suppurativa,

hypertension, left shoulder joint sprain, and obesity, but that none of these impairments, or combination thereof, had significantly limited her ability to perform work-related activities for twelve consecutive months. (Tr. 25). The ALJ thus determined that the claimant was not disabled. (Tr. 32).

## Review

The claimant challenges the ALJ's step two finding that none of her impairments are severe, specifically her hidradenitis suppurativa.[3] She argues that the ALJ erred in particular by failing to properly analyze the medical evidence related to her chronic skin condition. Because the ALJ did fail to properly analyze the evidence of the impairments, the Commissioner's decision must be reversed and the case remanded to the ALJ for further proceedings.

On May 10, 2006, the claimant received treatment at the McAlester Health Clinic for complaints of boils on her buttocks and underarms. She informed them that she had experienced these problems for a number of years. (Tr. 236). She was diagnosed with hidradenitis suppurativa, and prescribed medications to treat it. (Tr. 236-237). She missed a June 12, 2006 appointment, but went in on June 15 complaining of increased pain that radiated down her posterior. In addition to her left buttock, a notation stated, "tenderness sciatic notch." (Tr. 232). She was referred to a pain clinic on July 12, 2006. (Tr. 232). In August 2006, the claimant was treated in Talihina, Oklahoma, for her

---

[3] "Hidradenitis suppurativa is a chronic disease of a type of sweat gland. It can occur in one or multiple areas of your body. [It] usually develops in your armpits, groin, and anal area." "Hidradenitis Suppurativa." http://www.nlm.nih.gov/medlineplus/hidradenitissuppurativa.html.

complaints of pain. The impression was chronic LLE, with hip, buttock, and back pain that seemed myopathic in nature, as well as a possibility of leg length discrepancy but with a normal gait. (Tr. 221-222). By October 2006, she was reporting a level of pain at a three or four out of ten. (Tr. 219). She missed a number of appointments and was discharged from the clinic in Talihina. (Tr. 218). On April 30, 2008, the claimant again received treatment for boils under her left armpit, as well as her bilateral buttocks and peri area. She reported having the condition for years, and rated her pain at a 7 on a scale of 10. (Tr. 231). She had several follow-up appointments for the hidradenitis suppurativa, and reported the condition first manifested when she was 13 years old. (Tr. 229). On February 24, 2009, the claimant went to the Health Clinic with a left shoulder joint dislocation. She informed them that this is a common occurrence and she is usually able to reduce it herself but had been unable to this time. (Tr. 226). A CT of the left shoulder revealed no acute fractures or dislocations, but a tiny bone fragment inferior to the glenohumeral joint possibly representing remote fracture. (Tr. 214). Dr. Ronald Schatzman conducted a consultative examination of the claimant on March 17, 2010. (Tr. 255-261). He assessed her with hydradenitis suppurativa, recurrent dislocation of left shoulder by history, tobacco abuse by history, marijuana abuse by history, obesity, hypertension, and recurrent hip locations replaced by chiropractor but not involving ER treatment. (Tr. 257).

At the administrative hearing, the claimant testified that her impairments were the chronic skin condition, chronic pain, bone fragments in her left shoulder, and her "left hip

is messed up." (Tr. 44).  She stated that she is able to drive fifty percent of the time, but she is prevented the other half of the time by boils, or big sores, on her posterior.  (Tr. 42-43).  She testified that she stopped working because she was working in a kitchen and the boils were unsanitary, and that the boils are on her buttocks, underneath her arms, underneath her breasts, on her legs, and on her stomach, and that she gets them "all the time."  (Tr. 46-47).  She stated that they cause her pain in walking and using her arms.  (Tr. 47).  She further testified that she gets staph infections when she has a boil.  (Tr. 48).  She stated she usually treats them with hot and/or cold rags, depending on how they feel, and that they take several weeks and up to a month to resolve.  (Tr. 48).  She also testified that she hurt her left shoulder in high school and needed surgery on it, but never had it.  (Tr. 48-49).  She stated that, depending on the location of the boils, they could affect her ability to stand, walk, and get comfortable.  (Tr. 50).

The claimant argues that the ALJ erred at step two of the sequential analysis by failing to find her hidradenitis suppurativa to be a severe impairment.  A claimant has the burden of proof at step two to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two

is a *de minimus* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. In this case, the claimant was treated a number of times for hidradenitis suppurativa, and was also sent to a pain clinic to manage her pain. The Court is satisfied that this meets the claimant's *de minimus* burden of showing an impairment at step two. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("The evidence . . . showed that she . . . had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.") [citations omitted].

Because the claimant met her burden of showing a severe impairment at step two, the decision of the Commissioner should be reversed and the case remanded for further analysis. Upon remand, the ALJ should evaluate the claimant's impairments, singly and in combination, in accordance with §§ 404.1520a(c)(3), 416.920a(c)(3).

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma